SALLIE KEMPER, ET AL. *v.* J. R. KEMPER, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—98.]

**Parol Trust in Face of Written Instrument.**

While the law often and properly makes the husband a trustee
for the wife for her protection, unless the testimony is clear
and satisfactory a parol trust will not be enforced in the face of a
written instrument.

**Description of Land in a Judgment for Partition.**

A judgment for the sale of land should so describe it as to enable
the commissioner to describe and locate it without referring to any
other paper in the record, but where land is to be divided a gen-
eral description of it in the judgment is sufficient and the same
strictness of rule is not required.

APPEAL FROM OWEN CIRCUIT COURT.

May 5, 1885.

OPINION BY JUDGE HOLT:

This action is for the partition of real estate among the heirs of
Levi Kemper, deceased, and to allot to his widow her dower, she
claiming one tract of 105 acres absolutely.

The deed to it was made to her husband on June 9, 1858, and he died intestate in January, 1883. The testimony shows that he paid for it with money received by him through his wife, the appellant, Sallie Kemper, and which she derived from her father's estate, and she now claims that her husband held the legal title to it in trust for her.

He had been twice married and had surviving several children by his first, and nine children by his last wife. It appears that those by his first wife had received through her about $100, and there is evidence tending to show that there was an understanding between the father and his last wife that the children by the latter should each be given the same sum and in fact it, or at least a portion of it, was given to three of them in the father's lifetime. This intention was a meritorious one, looking as it did to the like treatment of all the children, and was doubtless prompted by the fact that the father had received by his last wife and from her father's estate about $2,400. It does not appear that there was any agreement whatever between her and the husband, when or prior to the time he received estate, for its reinvestment for her or prior to or when the 105 acres was purchased. Indeed the ground of her claim to it is not clearly stated by her in her own testimony. The exceptions to her deposition and the others taken for defendants, were properly overruled. They were so general in their character that they raised the question of her competency as a witness. A portion of her testimony and that of the other witnesses was certainly competent evidence, and the exception should be specific to reach what is incompetent. In this instance it was merely that the testimony was incompetent, and that she was an incompetent witness.

The substance, however, of her own testimony is, that there was no agreement between her and her husband when the land was purchased or prior thereto, that the title was to be taken to her, but that frequently thereafter he told her, that if he did not give each of her children as much as his children by his other wife had received through their mother, that then he would secure her in the 105 acres of land. Her testimony is vague and uncertain as to how or to what extent this was to be done.

For instance, she says: "He (Levi Kemper) says that he did not have the money to give the children as he had promised and that

he intended to have the deed fixed so that I could hold the land."

Then again: "He said that he intended to make my children all equal and to then give the land all to me until my death and then to be equally divided."

Again in speaking of what occurred when or about the time the land was purchased, she says: "He (her husband) was to make the deed in his name and mine so that I could hold the land in case he didn't give my children as much as the other children had had when they were twenty-one years old."

Upon her cross-examination, however, it appears that this could not have occurred until after the land had been conveyed to the husband, while in one place she says that at her death it was to be divided equally among the children, yet in another she says, that it was to be equally divided among those of both sets.

Three other witnesses testify to statements made by the husband, and all of which occurred long after the land had been conveyed to him. One says that he said that he wanted her to have the land; that her money had been paid for it; another, that it was her land, that her money had been paid for it and he wanted her to have it; another that it was the old lady's land and he wanted her to have it as her money had paid for it.

This testimony shows that the widow truthfully states that she and her husband talked generally of the matter and that he often expressed an intention to so arrange it in some way that if he did not in his lifetime give to her children as much as his other children had gotten from their mother; that then the land was to be secured to her or her and her children; but this was never done, and it all occurred after the land had been conveyed to the husband.

Over twenty years had elapsed from the time the land was purchased before she asserted the claim. During all of this time the deed was of record. There is testimony tending to show that the wife during the lifetime of the husband heard the deed read, had it in her possession at times, and had opportunity to see it frequently. The law often and properly makes the husband a trustee for the wife for her protection; but unless the testimony is clear and satisfactory a parol trust can not be enforced in the face of a written instrument.

In this case the legal title is in the heirs of Levi Kemper, and they are not compelled to resort to equity to get it. In *Malorys v. Ma-*

*lory's Adm'r.,* 5 Bush 465, the wife's land was sold upon the husband's promise to reinvest the proceeds in her name in the other land. At his death no deed had been made, but only a title bond given in his name, and it was shown by the testimony that it was his intention to have had the deed made to her.

In *Faris and Wife v. Dunn, et al.,* 7 Bush 218, a father bought for his daughter a hundred acres of land with her money, and without her knowledge took the title to himself. She was put in possession and after holding it for years as her own, joint mortgage creditors of the father sought to subject it, at least, one of whom knew of the trust, and it was held that the long possession protected it and the facts presented a sufficient defense. In *Miller and Wife v. Edwards,* 7 Bush 396, the land of the wife was sold, and the proceeds reinvested in other land, the title being taken to the husband without the wife's knowledge, although it had been expressly agreed that it was to be made to her.

Upon its sale the notes for a portion of the price were under an express agreement taken payable to her husband for her separate use, and deposited with a stranger for her, and it was held that the husband's creditors could not subject them. In these and other cases where a trust for the wife has been upheld when the legal title was in the husband, it has always been held that it must be shown by clear and convincing testimony, and the difference between them and this one is apparent.

It is urged that upon the balances due to some of the children to make them equal in advancements, that interest should have been allowed from the time of their majority; also that the judgment directed the widow's dower in the lands ordered to be divided, to be allotted without further defining the meaning or extent of it; and that the judgment does not sufficiently describe the lands to be divided. It only speaks of them as "the three tracts of land left by the decedent at his death conveyed to him by R. R. Revell, F. W. Hawkins and John F. Matthews, more particularly described in the petition and in the several deeds filed herein."

Interest is not chargeable upon an excess of advancement, and in our opinion it should not be allowed to an heir from the date of his majority out of the estate of the ancestor in case he did not then see fit to make the advancement. Any other rule would lead to

numberless family disputes and differences, and this one approaches equality as near as is practicable.

The commissioners could not well have been misled by the failure to define the meaning of the widow's dower, and both the petition and exhibits specially described the land to be divided. It has been held that a judgment for the sale of land should so describe it as to enable the commissioner to describe and locate it without referring to any other paper in the record. This is mainly for the benefit of the purchaser, and to enable those desiring to bid for the land to do so intelligently, but where land is to be divided a general description of it in the judgment is sufficient and the same strictness of rule should not be required.

No one is then interested, but those who are parties to the action; and they can not know what land they are to get respectively until the report is filed and then they have opportunity, by means of excepting to the report of the commissioners, in case it is uncertain as to boundary or otherwise, to have it made certain before the making of their deeds.

Judgment *affirmed.*

*D. B. Hallam,* for appellant.

*E. E. Little, J. H. Dorman,* for appellee.

[Cited, *Bohannan v. Bohannan,* 29 Ky. L. 146, 92 S. W. 597.]